UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE RICHARDSON,
#255998,

        Petitioner,                                Civil Action No. 13-CV-11281

vs.                                         HON. BERNARD A. FRIEDMAN

SHERRY L. BURT,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, an inmate at the Muskegon Correctional Facility in Muskegon, Michigan,[1] has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, petitioner challenges his conviction for first-degree premeditated murder, MICH. COMP. LAWS § 750.316, two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, felonious assault, MICH. COMP. LAWS § 750.82, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. Petitioner was convicted of these crimes following a bench trial in Wayne County Circuit Court. In 2010, he was sentenced to life imprisonment without parole on the murder conviction, concurrent terms of five to fifteen years imprisonment on the assault with intent to murder convictions, a concurrent term of one to four years imprisonment on the felonious assault conviction,

_____

[1] Although the Muskegon Correctional Facility is located within the Western District of Michigan, the state court that convicted and sentenced petitioner is located within the Eastern District of Michigan. Therefore, pursuant to 28 U.S.C. § 2241(d), both districts "have concurrent jurisdiction to entertain [petitioner's] application" for a writ of habeas corpus.

a concurrent term of one to five years imprisonment on the felon in possession conviction, and a

consecutive terms of two years imprisonment on the felony firearm conviction. For the reasons set

forth below, the Court shall deny the petition. The Court shall also deny a certificate of appealability

and leave to proceed in forma pauperis on appeal.

## I.    Background

Petitioner's convictions stem from a 2009 dispute in a commercial parking lot and the

resulting shooting death of Christopher Hollins. The Michigan Court of Appeals described the

relevant facts as follows:

> Defendant's convictions arise from a shooting incident in a store
> parking lot. The prosecution witnesses generally agreed that defendant
> challenged Darryl Gilliam-French to a fight. Shortly thereafter,
> Vincent Anderson, drove into the parking lot and joined Gilliam-
> French. Anderson and defendant had been in a fight a few weeks
> earlier. According to witnesses, codefendant Frederick Campbell or
> another person shot Anderson in the leg. Anderson ran from the scene
> along with two other passengers from his car, Demarco Edwards and
> Christopher Hollins. Witnesses testified that defendant fired several
> gunshots at Anderson, Hollins, and Edwards as they were fleeing.
> Hollins was shot in the neck and died from his injury. Defendant then
> turned and pointed his gun at another passenger, Eric McWilliams,
> and ordered McWilliams out of the car. Defendant then entered a
> vehicle and left.

*People v. Richardson*, No. 300475, 2012 WL 104751, at *1 (Mich. Ct. App. Jan. 12, 2012) (footnote

omitted).

Following sentencing, petitioner filed an appeal of right with the Michigan Court of

Appeals raising the following four claims:

> I.    There was insufficient evidence to find that he had the specific
>       intent to kill beyond a reasonable doubt.
>
> II.   The trial court improperly applied the law to the facts of the
>       case when she determined that there was a specific intent to
>       kill.

2

III.    Defense counsel was ineffective when he waived opening argument, did not ask questions to emphasize the facts supporting the lesser verdicts, and gave no guidance to the trial court regarding the applicability of the lesser verdicts available in the case.

IV.    His due process rights to a trial by jury were violated when the trial court abused its discretion and failed to obtain a valid voluntary, knowing, and intelligent waiver of his constitutional right to trial by jury.

(ECF No. 16-10, PageID.781).  The Michigan Court of Appeals denied the requested relief and affirmed petitioner's convictions and sentences. *Richardson*, 2012 WL 104751, at *1-4.  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in standard form order. *People v. Richardson*, 817 N.W.2d 52 (2012).

Petitioner thereafter filed a federal habeas petition raising the same claims that he had raised on direct appeal.  (ECF No. 1).  He simultaneously filed a motion asking the Court to hold his habeas petition in abeyance to allow him to return to the state courts to exhaust additional claims. (ECF No. 3).  The Court granted that motion, stayed the proceedings, and administratively closed the case.  (ECF No. 8).  The Court stated that "upon receipt of a motion to reinstate the habeas petition following exhaustion, [it] may order the Clerk to reopen this case."  (*Id*., PageID.46).

Petitioner then filed a motion for relief from judgment with the state trial court raising the following five claims:

I.    His convictions violate his Sixth Amendment and due process rights where Wayne County Prosecutor Screen was allowed to testify, without objection, to the medical examination of the decedent, and had no personal knowledge about the actual examination.

II.    His due process rights were violated when he was found guilty of first-degree murder based upon insufficient evidence.

3

III.     He was denied the effective assistance of trial counsel where counsel failed to investigate and present witnesses who could testify in a manner favorable to the defense.

IV.     He was denied the effective assistance of appellate counsel where counsel neglected strong, critical issues which must be seen as significant and obvious.

V.     He demonstrated both good cause and actual prejudice stemming from the irregularities that support his claims for relief in this post-trial proceeding.

(ECF No. 16-7, PageID.687).   The trial court denied relief on these claims pursuant to Michigan Court Rule 6.508(D)(2)-(3) and on the merits. *People v. Richardson*, No. 10-000172-FC (Wayne Co. Cir. Ct. Sept. 30, 2013) (ECF No. 16-9).   Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied for failure to establish entitlement to relief under Michigan Court Rule 6.508(D)(3). *People v. Richardson*, No. 319776 (Mich. Ct. App. Feb. 19, 2014) (ECF No. 16-12, PageID.873).   Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied pursuant to Michigan Court Rule 6.508(D). *People v. Richardson*, 854 N.W.2d 877 (Mich. 2014).

Petitioner thereafter filed an amended habeas petition with this Court, but the case was not reopened.   (ECF No. 9).   Nearly four years later, petitioner filed a second amended habeas petition that is materially identical to his first amended petition.   (ECF No. 10).   He simultaneously filed a motion to reopen the case to proceed on the second amended petition.   (ECF No. 11).   The Court granted the motion and reopened the case.   (ECF No. 12).   In his second amended application, petitioner collectively raises all of the claims that he raised on direct appeal and on collateral review – nine claims in total.[2]   (ECF No. 10, PageID.160-72).   Respondent opposes all of the claims,

---

[2] The claims are combined in the second amended habeas petition as follows:  (I) There was insufficient evidence to find that he had the specific intent to kill beyond a reasonable doubt;

contending that they should be denied as procedurally defaulted and/or lacking in merit. (ECF No. 15).

## II.     *Standard of Review*

As the Supreme Court has stated:

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter "adjudicated on the merits in State court" to show that the relevant state-court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting § 2254(d)). A decision of a state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J.,

---

(II) The trial court improperly applied the law to the facts of the case when she determined that there was a specific intent to kill; (III) Defense counsel was ineffective when he waived opening argument, did not ask questions to emphasize the facts supporting the lesser verdicts, and gave no guidance to the trial court regarding the applicability of the lesser verdicts available in the case; (IV) His due process rights to a trial by jury were violated when the trial court abused its discretion and failed to obtain a valid voluntary, knowing, and intelligent waiver of his constitutional right to trial by jury; (V) His convictions violate his Sixth Amendment and due process rights where Wayne County Prosecutor Screen was allowed to testify, without objection, to the medical examination of the decedent, and had no personal knowledge about the actual examination; (VI) His due process rights were violated when he was found guilty of first-degree murder based upon insufficient evidence; (VII) He was denied the effective assistance of trial counsel where counsel failed to investigate and present witnesses who could testify in a manner favorable to the defense; (VIII) He was denied the effective assistance of appellate counsel where counsel neglected strong, critical issues which must be seen as significant and obvious; and (IX) He demonstrated both good cause and actual prejudice stemming from the irregularities that support his claims for relief in this post-trial proceeding.

concurring).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id*. at 409.

Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington v. Richter*, 562 U.S. 86, 100 (2011).  Further, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Harrington*, 562 U.S. at 101 (internal quotation marks omitted).  The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).  In addition, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.  *See* § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The federal habeas court's review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"[D]etermining whether a state court's decision resulted from an unreasonable legal

6

or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington*, 562 U.S. at 98. When the state courts' decisions provide no rationale, the burden remains on the habeas petitioner to demonstrate "there was no reasonable basis for the state court to deny relief." *Id*. However, when a state court has explained its reasoning, that is, "[w]here there has been one reasoned state judgment rejecting a federal claim," federal courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson*, 138 S. Ct. at 1194. Accordingly, when the last state court to rule provides no basis for its ruling, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id*. The "look through" rule applies regardless of whether the last reasoned state court opinion based its ruling on procedural default or ruled on the merits. *See id*. at 1194-95.

### III.    Discussion

#### A.       Sufficiency of the Evidence (Claims I, II, and VI)

Petitioner asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his convictions for first-degree premeditated murder and assault with intent to commit murder. He further contends that the trial court erred in finding sufficient evidence of premeditation and intent to kill.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The Sixth Circuit has explained:

> [In a habeas petition] in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are . . . bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony

7

and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (emphasis in original).

Under Michigan law, first-degree premeditated murder requires proof that "the defendant intentionally killed the victim with premeditation and deliberation." *People v. Taylor*, 737 N.W.2d 790, 793 (Mich. Ct. App. 2007). Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992). While there is no minimum time required to show premeditation under Michigan law, "the interval between thought and action should be long enough to give a reasonable person time to subject his or her actions to a 'second look.'" *Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003) (quoting *People v. Morin*, 187 N.W.2d 434, 449 (Mich. Ct. App. 1971)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Id.*

The elements of assault with intent to commit murder are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Warren v. Smith*,

161 F.3d 358, 361 (6th Cir. 1998) (citing *People v. Hoffman*, 570 N.W.2d 146, 150 (Mich. Ct. App. 1997)). Under the doctrine of transferred intent, a "general intent to kill need not be directed at an identified individual or the eventual victim." *People v. Abraham*, 662 N.W.2d 836, 841 (Mich. Ct. App. 2003). In other words, a defendant remains culpable even if he intended to shoot someone other than the actual victim. *See People v. Youngblood*, 418 N.W.2d 472, 475 (Mich. Ct. App. 1988).

The elements of an offense may be established through direct or circumstantial evidence, as well as reasonable inferences arising from that evidence. *See People v. Jolly*, 502 N.W.2d 177, 180 (Mich. 1993). This includes the identity of the perpetrator, *see People v. Kern*, 149 N.W.2d 216, 218 (Mich. Ct. App. 1967), and the defendant's intent or state of mind. *See People v. Dumas*, 563 N.W.2d 31, 34 (Mich. Ct. App. 1997). The use of a lethal weapon supports an inference of an intent to kill. *See id.* at 36.

Applying these legal standards, the Michigan Court of Appeals denied relief on petitioner's claims of insufficient evidence. The court explained in relevant part:

> The evidence showed that after an initial confrontation between defendant (and possibly others) on one side, and Anderson and Gilliam-French on the other, and after Anderson was shot in the leg, defendant fired several gunshots at Anderson, Edwards, and Hollins as they attempted to flee. Defendant's intent to kill may be inferred from his firing of multiple gunshots at the group as they ran. Further, there was sufficient evidence to find that defendant acted with a premeditated intent to kill. The evidence indicated that defendant was the second shooter. Anderson had already been shot in the leg, and Anderson, Edwards, and Hollins had begun running from the scene when defendant started shooting at them. As the trial court found, defendant had a sufficient opportunity to take a second look and reflect upon his actions when he fired at the fleeing victims. Defendant's prior conflict with Anderson further supports a finding that he acted with a premeditated intent to kill. Although it was Hollins who was killed, under the doctrine of transferred intent, proof that defendant intended to kill Anderson is sufficient, because defendant's general intent to kill need not be directed at a specific victim. *People v. Abraham*, 256 Mich App 265, 270; 662 NW2d 836

(2003).  Viewed in a light most favorable to the prosecution, this evidence supports a finding that defendant intentionally killed Hollins, and that the killing was done with premeditation and deliberation sufficient to establish first-degree murder.  There was also sufficient evidence of defendant's intent to kill to support his convictions for two counts of assault with intent to commit murder.

The record does not support defendant's argument that the trial court erred in its analysis of the elements of intent and premeditation. Defendant's argument concerning the murder charge is based on statements the court made in its findings concerning the assault with intent to commit murder charges.  With respect to the murder charge, the court specifically found that defendant "acted in premeditation, deliberation in killing Mr. Hollins."  The court explained that it found that the killing was premeditated because, after Anderson was shot, defendant "had time to back off[,][h]e had time to step back[,][h]e had time to cool off[,]" but instead of backing off, he went after Anderson, intending to kill him.  There is no indication in the trial court's findings concerning the murder charge that the court misunderstood or misapplied the elements of first-degree murder and combined them with the elements of second-degree murder.

Further, there is no indication that the court convicted defendant of the assault with intent to commit murder counts on the basis of an intent less than an actual intent to kill. On the contrary, the trial court specifically found that defendant "intended to kill these persons."

For these reasons, we reject these claims of error.

*Richardson*, 2012 WL 104751, at *1-3.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.  The prosecution presented sufficient evidence to establish that petitioner acted with premeditation and intent to kill.  The testimony of the surviving victims, DeMarco Edwards and Vincent Anderson, along with that of Darryl Gilliam-French, indicates that (1) petitioner had a dispute with Anderson; (2) a confrontation occurred in the parking lot; (3) someone shot Anderson in the leg; (4) petitioner fired multiple shots at Anderson, Edwards, and Christopher Hollins as they attempted to flee the scene; and (5) Hollins was fatally

10

struck by gunfire.  (ECF No. 16-3, PageID.389-406, 443-50, 467-77).  A victim's testimony alone "is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (compiling cases).  It was therefore reasonable for the trial court to conclude that petitioner was the perpetrator and that he had the requisite intent to support the first-degree murder and assault with intent to commit murder convictions.  It was also reasonable for the Michigan Court of Appeals to affirm that verdict.  For these reasons, habeas relief is not warranted on these claims.

### B.    *Effectiveness of Trial Counsel (Claim III)*

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for (1) waiving his opening statement and (2) focusing on attacking the credibility of the prosecution's witnesses on the issue of identification in order to obtain an outright acquittal instead of focusing on lack of premeditation and specific intent in order to obtain convictions on lesser offenses.

A habeas court's review of a lawyer's performance is "doubly deferential." *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014).   The first layer of deference is the deficient-performance-plus-prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Under *Strickland*, petitioner must show that (1) counsel's "performance was deficient" and (2) "the deficient performance prejudiced the defense."  *Id.* at 687.  Constitutionally deficient performance may be found if "counsel committed an error so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687, internal quotation marks omitted).  A strong presumption of effectiveness applies.  *See Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000).

Under AEDPA, the second layer of deference asks "whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226.

11

To prevail on an ineffective assistance claim, a habeas petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

The Michigan Court of Appeals denied relief on these claims for the following reasons:

> On appeal, defendant challenges trial counsel's decisions to waive opening statement and to focus on attacking the credibility of the prosecution witnesses in an attempt to gain outright acquittal. He contends that a better strategy would have been to use opening statement and cross-examination to highlight the weaknesses of the prosecution's evidence of defendant's intent and premeditation in order to obtain convictions on the lesser offenses of second-degree murder and assault with intent to do great bodily harm. As defendant recognizes, the decisions whether to waive opening statement, what evidence to present, and whether to call or question witnesses were matters of trial strategy. *People v. Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009); *Rockey*, 237 Mich App at 76. Defendant's argument falls far short of overcoming the presumption that counsel's employed strategy was sound. *LeBlanc*, 465 Mich at 579. Defendant's hindsight strategy of seeking convictions of lesser offenses instead of outright acquittal would have required counsel to persuade the trial court that defendant did not act with premeditated intent to kill when he fired a gun at three individuals as they ran away from him. Defense counsel's decision not to pursue that strategy in favor of challenging the reliability of the prosecution witnesses was not objectively unreasonable.

*Richardson*, 2012 WL 104751, at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. First, "[a]n attorney's decision not to make an opening statement is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel." *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004) (internal quotation marks omitted); *see also Moss v. Hofbauer*, 286 F.3d 851, 863 (6th Cir. 2002) ("A

12

counsel's failure to make an opening statement . . . does not automatically establish the ineffective assistance of counsel.").

Here, petitioner has failed to show that counsel's decision to waive an opening statement constituted deficient performance. Counsel may have reasonably decided to forego an opening statement as a matter of trial strategy. Additionally, petitioner has failed to demonstrate any prejudice resulting from counsel's conduct. As discussed above, the prosecution presented significant evidence of petitioner's guilt of first-degree murder and assault with intent to commit murder. There is no reasonable probability that the outcome at trial would have been different had counsel made an opening statement. Petitioner has therefore failed to show that counsel was ineffective in this regard.

Second, as to the defense at trial, the Sixth Circuit has concluded that an "all or nothing" strategy, where defense counsel in a murder case foregoes pursuing mitigation in favor of a chance at acquittal, is reasonable where there is sufficient evidence in the record to support the chance of acquittal. *Kelly v. Lazaroff*, 846 F.3d 819, 830 (6th Cir. 2017); *see also Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005) (stating that counsel's decision not to request a jury instruction on the lesser included offense of manslaughter was sound trial strategy, where defendant's primary line of defense was that he did not shoot the victim).

Here, based on particular weaknesses in the prosecution's case and issues with various witnesses' credibility, counsel decided to present a defense of mistaken identification. This was a sound trial strategy, particularly given the strong evidence supporting the elements of premeditation and intent to kill (i.e., that the shooter fired multiple shots at the victims as they attempted to flee). Under these circumstances, convictions on lesser offenses were unlikely. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Additionally, given the above-discussed evidence

13

presented at trial, petitioner cannot establish that he was prejudiced by counsel's conduct.  Nor has petitioner shown that the Michigan Court of Appeals' decision rejecting this claim was contrary to Supreme Court precedent.  Habeas relief is therefore not warranted on petitioner's claim of ineffective assistance of trial counsel.

### C.    *Jury Trial Waiver (Claim IV)*

Petitioner next asserts that he is entitled to habeas relief because his jury trial waiver was invalid.  In particular, he contends that the trial judge failed to sufficiently inquire into whether his waiver of his jury trial right was voluntary, knowing, and intelligent.

The right to a jury is fundamental.  *See Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).  The Sixth Circuit has explained:

> Criminal defendants may waive their right to trial by jury only if four conditions are met.  First, the waiver must be in writing.  Second, the government attorney must consent to the waiver.  Third, the trial court must approve the waiver.  Fourth, the defendant's waiver must be voluntary, knowing and intelligent.

*United States v. Martin*, 704 F.2d 267, 271 (6th Cir. 1983).  A petitioner bears the burden of proving that his jury trial waiver was not voluntary, knowing, and intelligent.  *See Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2004).  "Whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case."  *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942).  However, "there is no constitutional requirement for the trial court to conduct a colloquy with the defendant prior to a jury waiver."  *Sowell*, 372 F.3d at 832.

In this case, the Michigan Court of Appeals concluded that petitioner's jury trial waiver was valid.  The court explained in relevant part:

> Defendant argues that his jury waiver was inadequate because the trial

14

court failed to inquire whether he was under the influence of any medication, whether he had been diagnosed or treated for mental illness, whether he understood the importance of his right to a jury trial, and whether he understood the difference between a jury trial and bench trial. Defendant does not cite any authority requiring specific inquiry into these matters. Defendant's reliance on *Godinez v. Moran*, 509 US 389; 113 S. Ct. 2680; 125 L.Ed.2d 321 (1993), is misplaced because that case addresses the sufficiency of a guilty plea and waiver of counsel.

In this case, the trial court questioned defendant regarding the voluntariness of his decision to waive a jury trial. The court specifically asked defendant whether his decision was prompted by any threats, coercion, or a promise of anything in exchange. Although the court did not specifically question defendant regarding his knowledge of the difference between a jury trial and a bench trial, the court repeatedly referred to defendant's right to a jury trial. The court also ascertained that defendant had consulted with his counsel, defense counsel stated that he had explained defendant's options to him, and defendant agreed with this statement. The court specifically asked defendant whether he wanted to relinquish his right to a jury trial and "to have this Court hear your matter." Defendant responded, "Yes." Lastly, there is no indication in the record that defendant was under the influence of any medication or had any condition that prevented him from understanding and knowingly and voluntarily waiving his right to a jury trial. Because the record establishes that defendant's jury waiver was knowingly and voluntarily made, we reject this claim of error.

*Richardson*, 2012 WL 104751, at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. First, to the extent that petitioner alleges a violation of state law or procedure, he is not entitled to relief. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has "stated many times that federal habeas relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Petitioner is therefore not entitled to federal habeas relief on any error of state law.

Second, petitioner has failed to establish a violation of federal law. A review of the record confirms that petitioner's jury trial waiver was valid. Petitioner consulted with defense counsel prior to waiving his right to a jury trial and executed a written waiver. Before the start of trial, the trial court discussed this decision with petitioner. Petitioner acknowledged that he had a right to a jury trial, confirmed that he wanted to waive this right and proceed with a bench trial, and indicated that he was doing so freely. (ECF No. 16-3, PageID.351-55). On the basis of this record, the Court concludes that petitioner has failed to show that his jury trial waiver was invalid. Rather, the record indicates that it was voluntary, knowing, and intelligent. Habeas relief is not warranted on this claim.

### D.      *Procedurally Defaulted Claims (Claims V and VII)*

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The Sixth Circuit has explained:

> In determining whether a claim is procedurally defaulted for the purpose of federal habeas review, the reviewing court must determine: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner did not comply with that rule; (2) whether the state court enforced the procedural sanction; (3) whether the state procedural rule is an independent and adequate state ground to foreclose review of the federal constitutional claim; and (4) whether the petitioner can establish cause for failing to follow the procedural rule and prejudice by the alleged constitutional error.

*White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989) (internal quotation marks omitted). The last explained

16

state court ruling is used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

Petitioner first presented his claims involving the Wayne County Prosecutor's autopsy testimony (Claim V) and his trial attorney's failure investigate and present witnesses (Claim VII) on collateral review in a motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in relevant part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* MICH. CT. R. 6.508(D)(3). The Sixth Circuit has held that form orders like the ones used by the Michigan appellate courts to deny leave to appeal in this case do not provide the clear and express statement necessary to trigger procedural default. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). This is because the citation to Michigan Court Rule 6.508(D) is "ambiguous as to whether [it] refer[s] to a procedural default or a denial of relief on the merits." *Id.*

When the last state court ruling is unexplained, a habeas court must "look through" the unexplained order to the rulings of the lower state courts in order to determine the basis for the denial of the relevant claims. The Supreme Court has explained that

> [w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. . . . [W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

*Ylst*, 501 U.S. at 803.

Here, the Michigan Court of Appeals denied relief on procedural grounds, ruling that petitioner had not shown cause and actual prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise these claims on direct appeal. (ECF No. 16-12, PageID.873). The state trial court also denied relief on procedural grounds, citing the same state court rule as well as Michigan Court Rule 6.508(D)(2), which applies to claims previously raised and decided on direct appeal. (ECF No. 16-9). The lower state courts clearly and expressly stated that their decision to deny petitioner relief on Claims V and VII rested on a state procedural bar. Accordingly, these claims are procedurally defaulted.

"[A] federal habeas corpus petitioner who fails to comply with a state's rules of procedure waives his right to federal habeas corpus review absent a showing of cause for non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must show that some external impediment frustrated his or her ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

> Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel . . . is cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.

*McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. As discussed above, in order to establish ineffective assistance of counsel, petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced

18

the defense." *Strickland*, 466 U.S. at 687 (1984). In determining whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id*. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks omitted). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner" – "an issue which

19

was obvious from the trial record and one which would have resulted in a reversal on appeal." *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (citations omitted).

Petitioner has failed to show that by omitting Claims V and VII on direct appeal, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial issues on direct appeal, including claims challenging the sufficiency of the evidence and the effectiveness of trial counsel. Further, neither of the procedurally defaulted claims is a "dead-bang winner" given the significant evidence of guilt that was presented at trial. Because petitioner has failed to establish ineffective assistance of appellate counsel, he has also failed to establish cause to excuse his procedural default.

Where a petitioner is unable to establish cause and prejudice, a procedural default may nonetheless be excused "in cases of manifest injustice." *Murray*, 477 U.S. at 493. This exception applies in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. at 496. To be credible, such a claim requires a petitioner to provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has made no such showing. These claims are thus barred by procedural default and are not cognizable on habeas review.

###### E.    *Ineffective Assistance of Appellate Counsel (Claim VIII)*

Petitioner next raises an independent claim that appellate counsel was ineffective for failing to raise his collateral review claims on direct appeal. The state trial court denied relief on this claim on collateral review, concluding that counsel reasonably focused on issues more likely to

20

prevail on appeal and that the underlying claims lacked merit.  (ECF No. 16-9, PageID.758).  The

state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application

of federal law.  As discussed above, the ineffective assistance of appellate counsel claim, while not

itself procedurally defaulted, nonetheless lacks merit as petitioner has failed to meet his burden under

*Strickland*.  Habeas relief is therefore not warranted on this claim.

### F.     *Cause and Prejudice on State Collateral Review (Claim IX)*

Finally, petitioner asserts that he presented sufficient cause and prejudice in the state

courts to have his otherwise procedurally defaulted claims reviewed on the merits pursuant to

Michigan Court Rule 6.508(D).  As discussed above, a state court's alleged failure to properly apply

state law or its own procedural rules is not cognizable on federal habeas review.  A federal court's

power to grant a writ of habeas corpus only extends to errors in the application of federal law.  *See*

*Estelle*, 502 U.S. at 67-68.  "[F]ederal habeas relief does not lie for errors of state law."  *Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990).

Moreover,

> the Sixth Circuit has consistently held that errors in post-conviction
> proceedings are outside the scope of federal habeas corpus review.
> [It has] clearly held that claims challenging state collateral
> post-conviction proceedings cannot be brought under the federal
> habeas corpus provision, 28 U.S.C. § 2254, because the essence of
> habeas corpus is an attack by a person in custody upon the legality of
> that custody, and . . . the traditional function of the writ is to secure
> release from illegal custody.  A due process claim related to collateral
> post-conviction proceedings, even if resolved in a petitioner's favor,
> would not result [in] . . . release or a reduction in . . . time to be served
> or in any other way affect his detention because we would not be
> reviewing any matter directly pertaining to his detention.  Though the
> ultimate goal in a case alleging post-conviction error is release from
> confinement, the result of habeas review of the specific issue[] . . . is
> not in any way related to the confinement.  Accordingly, [the Sixth
> Circuit has] held repeatedly that the scope of the writ [does not] reach
> this   second   tier   of   complaints   about   deficiencies   in   state

post-conviction proceedings, noting that the writ is not the proper
means to challenge collateral matters as opposed to the underlying
state conviction giving rise to the prisoner's incarceration.

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (internal quotation marks and citations omitted).

Because petitioner's final claim challenges the state courts' application of state law in the context of

his state collateral post-conviction proceedings, it fails to state a claim upon which habeas relief may

be granted.

## IV.    *Conclusion*

Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue, as

petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2).

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma

pauperis because no appeal in this case could be taken in good faith.  *See* 28 U.S.C. § 1915(a)(3).

s/Bernard A. Friedman
Dated:  April 18, 2022                    BERNARD A. FRIEDMAN
        Detroit, Michigan                SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 18, 2022.

Terrance Richardson  #255998
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN
MUSKEGON, MI 49442

s/Johnetta M. Curry-Williams
Case Manager